**FARLEY v. RATLIFF, Deputy United States Marshal, et al.**

(Circuit Court of Appeals, Fourth Circuit. July 6, 1920.)

No. 1778.

1. **Army and navy ⊙⟶20—Registrant, failing to receive notice of induction, not "deserter."**

If one registered, examined, and accepted under the Selective Service Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), and informed that he would be notified by mail when to report for military duty, never received such notice, when it was subsequently mailed to him, and did not otherwise know of it, it could not be said that the mailing of the notice inducted him into military service, and that, for his failure to respond, he was a deserter therefrom.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deserter.]

2. **Army and navy ⊙⟶38—Intent essence of offense of "desertion."**

Under section 140, subsec. 1, pars. (a), (b), (c), of the regulations promulgated by the President under authority of Act May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), the Selective Service Law, prescribing as a deserter a registrant who does certain acts "with the intent to evade" military service, the intent, and, a fortiori, knowledge, is of the very essence of the offense.

3. **Habeas corpus ⊙⟶76—Return not showing alleged deserter's intent defective.**

Where registrant under the Selective Service Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), sought by habeas corpus to test the validity of his arrest for the purpose of delivering him to the military authorities as a deserter, return made by the officer to the writ, merely alleging that the registrant failed to respond to call and report for military duty, pursuant to the call theretofore mailed him, not averring that he did so with intent to evade military service, set up no reason for holding petitioner as deserter.

4. **Habeas corpus ⊙⟶16—After hostilities, registrant entitled to hearing before civil, instead of military, tribunal.**

Where a registrant failed to get notice of his induction into military service, and heard nothing more of the matter until about a year after

cessation of hostilities, at which time the draft board had long discontinued, the registrant is entitled preferentially to a hearing before the civil tribunals, instead of being treated as a deserter, under the Selective Service Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), and delivered to military authorities, and habeas corpus lies to prevent his being delivered to the military authorities for trial.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Petition by Manderville Farley for writ of habeas corpus against A. O. Ratliff, Deputy United States Marshal, and the Sheriff of Kanawha County, W. Va. From a judgment denying the petition, the petitioner appeals. Reversed, with directions.

Russell S. Ritz, of Bluefield, W. Va., for appellant.

J. N. Kenna, Asst. U. S. Atty., of Charleston, W. Va. (Lon H. Kelly, U. S. Atty., of Charleston, W. Va., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This is an appeal from a decision and order of the District Court for the Southern District of West Virginia, at Charleston, rendered on the 22d day of November, 1919, whereby the court refused to grant the petition of the appellant, praying for a writ of habeas corpus to discharge him from the custody of the appellee Ratliff, a deputy marshal, who claimed to hold appellant as a deserter from the United States army, and dismissed said petition. The facts of the case may be briefly stated as follows:

Appellant, hereinafter called the petitioner, on the 5th of June, 1917, was duly registered under the Selective Service Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k) for military duty, having filed his questionnaire as required by the act, and subsequently appeared for physical examination, classification, etc., was accepted, and informed that he would be notified by mail when to report for military duty. The petitioner resided on his father's farm in the country, some 20 miles from Princeton, where the draft board sat. Subsequently, in the month of May or June, 1918, a call was made for the petitioner to appear and report for military duty, and notice thereof regularly mailed to him at his post office address in the neighborhood of his home. That this notice petitioner did not receive, nor hear of until August, 1919, when he was under trial at Princeton for a state offense, of which he was discharged. That he was then taken before a United States commissioner, charged with the violation of the Selective Service Draft Act, in that he had failed to report for military duty after notice to do so, duly mailed to him. At that hearing he was sent on to the United States grand jury for the next session of the United States District Court, at Charleston, in November, 1919. Petitioner did not learn of the fact that the letter or call had been mailed to him, and had been received at his local post office without his knowledge, until several days after he was sent on to the grand jury.

Petitioner appeared at the November term of court at Charleston on

the 18th day of November, 1919, to answer his bail bond to do so, and remained in attendance to meet the charge against him. He was indicted on the 19th of November, and while still in attendance on the court to answer the indictment returned against him, he was, on the 21st day of November, arrested by the appellee, Ratliff, deputy marshal, not to answer the charge for violating the Selective Service Draft Act, for which he had been indicted, but as a deserter from the military forces of the United States, to be delivered to the military authorities at Camp Lee, Va. Petitioner immediately sued out his writ of habeas corpus, with a view of testing the validity of his arrest and detention, to which appellee made return; evidence was adduced by the government and the petitioner, the petitioner's prayer for the writ of habeas corpus was denied, and he held as a deserter, from which action of the court, this appeal is taken.

[1] A careful consideration of the record shows that the sole question presented is whether the petitioner was properly amenable to the civil authorities under the indictment returned against him for the offense with which he was charged, or to the military authorities for desertion; in other words, whether he was a deserter or not. Petitioner was unquestionably subject to call for military duty, and failed to respond in answer to the call. The point turns entirely upon whether he acted innocently or not in failing to respond. If, as a matter of fact, he never received notice, and knew nothing of its issuance, his liability for any offense is a matter of serious doubt, and least of all could it be said that the mailing of a notice he did not receive, and did not know of, inducted him into the military service, and for his failure to respond, that he was a deserter therefrom.

[2] The regulations promulgated by the President under authority vested in him by the act of Congress of May 18, 1917, commonly known as the "Selective Service Law" (second edition, Selective Service Regulations, p. 104), section 140, subsec. 1, paragraphs (a), (b), and (c), prescribe who shall be deemed a deserter, namely, a registrant, who, after the time for his induction into military service, and with the intent to evade such service (a) fails to report for military duty under induction orders, etc.; (b) fails to entrain for mobilization camp pursuant to orders; or (c) who absents himself from his party en route to embarkation camp, etc. Before either one of these requirements respecting desertion can become effectual, and the right of a citizen to a hearing in a civil, as distinguished from a military, court, denied, it must appear that the registrant acted "with intent to evade" such service. The intent with which the alleged act was committed, and, a fortiori, knowledge on the subject, is of the very essence of the offense.

[3] In this case, the return made by the officer to the writ of habeas corpus, in fact sets up no reason for holding petitioner as a deserter; it being merely averred that the petitioner, duly registered under the Selective Service Draft Act, failed to respond to the call, and report for military duty, pursuant to the call theretofore mailed to him. No averment is made that he did so, with intent to evade military service, and the only testimony offered to support the claim of desertion was that of the chairman of the local draft board, who testified that he did not know whether petitioner ever got the notice of his call for military

duty or not, and that his post office was some 20 miles away from Princeton, where the board sat. This of itself entitled the petitioner to discharge from answering the crime of desertion, and he should have been allowed to meet the indictment for failure to respond to the call of the board, if the government desired to proceed with the prosecution.

The petitioner made full explanation of why he failed to receive the letter in question, and that he did not know of its existence until he had been sent on by the United States commissioner in the manner herein indicated. He denied all knowledge of the letter under oath, and called a witness who testified that he lived on petitioner's father's farm, where petitioner also lived, about half a mile away from petitioner; that the farm was a mile and a half from the post office, and that it was the custom of whoever went to the post office to call for the mail of all persons on the farm; that in May or June, 1918, witness' father, who had since died, went to the post office, and upon returning told witness that he had received from the post office a call for the petitioner to report for military duty, but he had lost it on his way home; that witness and his father then walked back to the post office to try and find the notice, but were unable to do so, and witness' father requested him to go to the home of Manderville Farley and tell him of the call and its loss, which witness said he did about 3 or 4 o'clock in the afternoon, but found no one at home, and on the following day witness left the farm and went to Lillybrook to engage in timber work, and forgot all about the call, and did not advise Farley about it until 2 or 3 days after the latter was arrested in August, 1919, when he recalled it.

This uncontradicted evidence would seem to preclude any idea of petitioner being a deserter, if not to exonerate him from the violation of any of the provisions of the Selective Service Draft Act.

[4] The effect of the arrest of the petitioner, and his committal as a deserter, instead of proceeding with the indictment theretofore duly returned against him, and for which he had been held to answer, was to subject him to trial for the offense charged, viz. the violation of the Selective Service Law, by a military court-martial, instead of by the civil court, in which he had been indicted. This was of doubtful propriety in any event. The war had been over, save technically, more than a year, and some 9 months prior to the original arrest; the selective service draft board had been long discontinued and dissolved; and every reason existed, apparently, why the citizen was entitled preferentially to a hearing in the courts of his country, with the right of trial by jury, rather than in a military tribunal by court martial. The case of Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281, contains a full, most interesting, and comprehensive review by the Supreme Court of the United States of this subject, from which it will be seen that, in times of peace, the citizen's right to trial in the civil courts will not be lightly disregarded.

For the reasons stated, the order of the lower court is reversed, and the proceedings remanded to said court, with directions to discharge the petitioner from detention as a deserter.

Reversed.