**UNITED STATES ex rel. BERGDOLL v. DRUM, Lieutenant General, et al.**

**No. 173.**

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1939.

898

Harry Weinberger, of New York City (Harold M. Weinberger, Chester A. Pearlman, and W. E. Aronberg, all of New York City, of counsel), for relator-appellant.

Mathias F. Correa, Asst. U. S. Atty., of New York City (John T. Cahill, U. S. Atty., and Walter H. Gahagan, Jr., Asst. U. S. Atty., both of New York City, on the brief), for respondents-appellees.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

Grover Cleveland Bergdoll appeals from the dismissal below of a writ of habeas cor-

pus, sued out on his relation against the officers of the United States Army who are detaining him in military prison pursuant to a sentence imposed by a military court martial.

On June 15, 1917, Bergdoll, the relator, then twenty-three, registered with the draft authorities, as was required of all persons of draft age for the World War under the Selective Service Law of May 18, 1917, 40 Stat. 76, 50 U.S.C.A. § 226 note. On August 11, 1917, a post card was mailed to his home by Local Board 32, notifying him to appear for a physical examination on August 14. It is Bergdoll's claim that he was on a vacation trip when this notice was mailed. His mother received the post card, and communicated with the draft authorities in an attempt to secure a postponement. When Bergdoll failed to appear on the date set for his physical examination, Local Board 32 disclosed to the newspapers that Bergdoll was a delinquent. He claims that he became frightened by the tumult aroused; hence he fled and remained a fugitive until his apprehension by the military authorities in 1920. Local Board 32 was required by Section 133 of the Selective Service Regulations to inform the Pennsylvania Adjutant-General of Bergdoll's failure to report, but it did not do so.

About a year later, on July 15, 1918, the Local Board mailed to Bergdoll's address a questionnaire which Regulation 92 required him to answer within seven days. When no reply was forthcoming, the Local Board notified the Pennsylvania Adjutant-General, and on July 29, 1918, the Pennsylvania Adjutant-General's office mailed the notice (Form 1014) by which it is claimed Bergdoll was inducted into the army. The notice required him to report by August 8. He did not report. On August 13, the Pennsylvania Adjutant-General notified the Adjutant-General of the Army that Bergdoll was a delinquent and had been inducted into military service.

Relator was seized by the military authorities on January 7, 1920, and detained pending a court martial for desertion. He sued out a writ of habeas corpus, which was dismissed by Judge Learned Hand on March 5, 1920. The court martial then reached a judgment of conviction, and imposed upon him a five-year sentence in military prison. Shortly thereafter Bergdoll escaped, remaining at large until his recent voluntary return on May 25, 1939, when he was retaken by the military authorities. He now brings this second writ of habeas corpus, and appeals from its dismissal by the District Court.

When the relator sued out his first writ of habeas corpus in 1920, he raised and Judge Learned Hand disposed of many of the same issues now argued before us. All the remaining issues could have been, though they were not, argued in the prior proceeding, from which no appeal was taken. It is said that strict theories of res judicata have no application in habeas corpus cases. But among the matters which may be considered and even given controlling weight is a prior refusal to discharge the relator on a like application. It is within our power to dismiss this writ in reliance on the disposition made by Judge Hand of the earlier petition. Salinger v. Loisel, 265 U.S. 224, 231, 44 S.Ct. 519, 68 L.Ed. 989. Nevertheless, we have re-examined the contentions of the relator on their merits.

It is Bergdoll's claim that at no time was he lawfully inducted into the army. If he is correct, the army had no power to discipline him for desertion and he should be released from their custody and turned over to the civil authorities to answer for whatever crimes he has committed as a civilian failing to comply with the terms of the draft law.

The relator assigns four reasons for questioning the legality of his induction into the army: (1) The time set in the last notice mailed to him was less than ten days; (2) actual notice was not given; (3) the Adjutant-General never performed his proper functions; (4) the Selective Service Regulations, proclaimed by the Executive, exceed the authority conferred upon the President by the Selective Service Law. We take them up in order.

1. *Failure to give ten days' notice.* Section 131 of the Selective Service Regulations provides that the Local Boards shall furnish the Adjutant-General with the names of delinquents, by filling out and mailing to him Form 1013. Section 133 then recites:

"Upon receipt of Form 1013, the Adjutant-General of the State shall forthwith notify (Form 1014) the persons named therein to report to him for instructions by mail, telegraph or in person not later than a day and an hour, to be specified by such Adjutant-General in such notice, which day and hour shall not be less than ten days from the date of the notice.

900

"The day and hour shall be specified by the Adjutant-General of the State as the day and hour from and after which such registrants shall be in the military service of the United States, unless, upon the registrant reporting as ordered, the Adjutant-General shall stay or rescind such order into military service.

"If the order into military service is not stayed or rescinded by the Adjutant-General, by a subsequent order in writing prior to the arrival of the day and hour so specified, then from and after the day and hour so specified such person shall be in the military service of the United States and after the arrival of such day and hour the Adjutant-General of the State has no power to stay or rescind such order."

Following the sending out of Form 1014, induction into the army normally would occur automatically. Form 1014 called for the specification of a day and hour, at least ten days after the date of the notice, after which, as it stated, "you shall be in the military service of the United States." When that day and hour arrived, a draftee was in the army, and properly within the jurisdiction of the military authorities.

■ Form 1014 was mailed to Bergdoll, and on it was stated an appointed day and hour as required. But in this, of all cases, in view of the notoriety it had already received, the day and hour set was less than ten days from the date of the notice. The post card was mailed July 29; it required Bergdoll to report on August 8. Section 8 of the Selective Service Regulations states that in computing time the date of mailing and Sundays shall be excluded. Applying the test of Section 8, ten days would not have expired by August 8. In this respect the requirement of S. S. R. 133 was not literally complied with.

The relator urges that this error vitiates the notice. He argues that he could only be inducted into the army lawfully on the day and at the hour prescribed in the notice, and then only if the day and hour prescribed was ten days after the date of the notice. The day and hour appointed on the post card sent to Bergdoll was only nine days away, and he contends that he was not inducted into the army on the ninth day or on any day thereafter.

Inasmuch as S. S. R. 133 demands a ten-day notice, we can concede that no induction into the army took place on the ninth day, August 8. But we believe a fair construction of that regulation leads to the conclusion that a lawful induction took place after ten days, or on August 9, despite the error on the post card. The error was an irregularity, but it did not prejudice Bergdoll, it did not deprive him of his right to ten days' notice, and it did not invalidate either the notice or the automatic induction into the army which occurred ten days after the notice was issued.

The result might be otherwise in a case where the recipient of the notice was clearly prejudiced by the error, as, for example, where the recipient would have been able to present to the Draft Board cogent reasons for exemption or deferred classification, had he been given a full ten days in which to object. But Bergdoll never made any effort to communicate with the Draft Board at this time; he claims that he was in the West when the notice was mailed. He had then been a fugitive delinquent for almost a year, during which time this notice might have been issued to him. And no action was taken by the Adjutant-General of Pennsylvania to report his delinquency to the Adjutant-General of the Army until August 13, fifteen actual and thirteen legal days after the mailing of the notice. By this time, certainly unless prejudice is shown, Bergdoll had been automatically inducted into the army.

■ We are not unmindful of the tremendous significance of the change in a citizen's status from civil to military, and we appreciate that the statutes and regulations under which the change takes place must be interpreted with a full and fair regard for the rights of the individual. Such rights deserve adequate protection. They do not call for an overtechnical construction of the regulations not necessary for such protection and merely hampering to the Government in its tremendous task of mobilizing its man power into an effective fighting organization for the military service which the country had decided upon. Here the regulations called for ten days' notice (peculiarly computed), though they might just as well have prescribed less or even more time. But Bergdoll had the benefit of ten days' notice, nay, even of thirteen days' notice on any computation. A clerical error committed by the local Draft Board—civilians volunteering for the service without special training therefor—should not be held to throw the machinery of the draft out of commission when it worked no perceivable prejudice to the rights of any one.

■ We therefore conclude that the error in the date set in the draft notice for relator's induction into military service did not invalidate the notice, nor prevent his induction into the army on August 9. This was the holding of Judge Dickinson in a reasoned opinion in a criminal prosecution against relator's mother and others arising out of this same matter. United States v. Emma Bergdoll et al., D.C.E.D.Pa., 272 F. 498, appeal dismissed (the judgment having been satisfied) in 3 Cir., 279 F. 404, certiorari denied, 259 U.S. 585, 42 S.Ct. 589, 66 L.Ed. 1076. In United States ex rel. Feld v. Bullard, 2 Cir., 290 F. 704, certiorari denied, 262 U.S. 760, 43 S.Ct. 706, 67 L.Ed. 1220, the exact issue was involved and was argued in the briefs, though the opinion, upholding the validity of the induction into the army, does not refer to the error in computing the number of days for the notice.

■ 2. *Lack of actual notice.* The relator claims that since S. S. R. 133 did not specify whether actual or constructive notice was required, it must be held that actual notice was essential. He buttresses his argument by calling attention to the subsequent amendments to S. S. R. 133 made on September 16, 1918, after Bergdoll's induction, wherein notice by mail was specifically permitted. We do not believe that actual notice was required before or after these amendments, for reasons sufficiently stated in United States ex rel. Feld v. Bullard, supra; United States v. McIntyre, 9 Cir., 4 F.2d 823; Ex parte Erwin Bergdoll, D.C. Kan., 274 F. 458; United States ex rel. Helmecke v. Rice, D.C.S.D.Tex., 281 F. 326. In so far as Farley v. Ratliff, 4 Cir., 267 F. 682, and Ex parte Caplis, D.C. W.D.Tex., 275 F. 980, express conclusions otherwise, we are constrained to disagree. To require actual notice would enable a draftee to avoid military punishment simply by going into temporary seclusion or by fleeing from the draft, as here.

■ 3. *Failure of the Adjutant-General to function.* S. S. R. 133 states that the notice shall be sent by the Adjutant-General. The Adjutant-General's name was affixed to the post card sent Bergdoll, but by a rubber stamp, and not by actual signature. The Adjutant-General testified at the first military trial that he had authorized this practice and had given directions to his subordinates as to the steps to be taken in cases such as this. His directions were here carried out. The relator contends that the Adjutant-General had large powers of discretion, and no power to delegate this discretion to others acting for him and using a rubber stamp. Actually his duties are clearly prescribed and he seems to have fulfilled them adequately. In the 1920 habeas corpus proceeding the same point was raised. After Judge Hand had delivered his opinion in open court denying the writ, counsel asked for a ruling on this point. This drew from the court the following response: "There was a question raised that the notice of induction and the order of induction were only stamped. I thought it so frivolous that I did not mention it in my decision."

We agree that the issue of the rubber stamp was inconsequential.

■ 4. *Invalidity of the Selective Service Regulations.* The constitutionality of the Selective Draft Law was affirmatively settled in the Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856. At page 389 of 245 U.S., 38 S.Ct. at page 165, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas. 1918B, 856, the power to proclaim regulations, delegated to the executive, was expressly approved. The validity of the Regulations themselves was upheld in United States ex rel. Feld v. Bullard, supra, and in Franke v. Murray, 8 Cir., 248 F. 865, L. R.A.1918E, 1015. We see no necessity for reopening these questions now.

Affirmed.