## MOTHERSHEAD v. KING, Warden.
### No. 142.

District Court, W. D. Missouri, S. D.
Feb. 24, 1941.

James Mothershead, pro se.

Richard K. Phelps, First A'sst. U. S. Dist. Atty., and Otto A. Schmid, Asst. U. S. Dist. Atty., both of Kansas City, Mo., for defendant.

REEVES, District Judge.

The petitioner seeks his discharge from custody on several grounds—First, because of impaired hearing he did not understand the proceedings at the time he entered a plea of guilty and was sentenced, or, specifically, as he alleges, "without petitioner being able to hear a word of the indictments read out to him and without having been furnished a copy of the same to read

for himself." The second and third grounds asserted by the petitioner are that he was "without the assistance of counsel, in his defense, and without petitioner's waiving the assistance of counsel, or the service of a copy of the indictments against him, your petitioner entered a plea of guilty thereto, as the result of inadvertence, ignorance, persuasion and misinformation, and thereupon said Judge of said Court sentenced your petitioner to fifteen years' imprisonment."

In the petition reference is made to a former proceeding in this court, as follows: "Petitioner says that the petition now presented is not the same petition as originally filed as petition No. 21, but has important and significant differentiations, but that it does include substantially the same fundamental issues, with a variant of factual allegation."

When the petition mentioned was filed and presented there was a dismissal on the ground that it did not state facts warranting the issuance of a writ of habeas corpus. From this ruling an appeal was taken and the case was reversed. The Court of Appeals ruled that the petitioner was entitled, when he entered his plea of guilty, to the aid of counsel and since it did not appear that he had intelligently and competently waived the right the petition was sufficient and the writ ought to have been issued. 8 Cir., 112 F.2d 1004.

Upon the reversal of the case and after the mandate had been received, Judge Otis promptly docketed the case for hearing at Kansas City and caused the petitioner to be brought here for the trial. The government at great expense brought witnesses from Washington, D. C., to testify on behalf of the Warden. At the conclusion of the trial Judge Otis made the following Findings of Fact:

"I. When the petitioner was arrested on a charge of breaking and entering a place of business in the City of Washington, he was able to understand conversation if carried on in a tone of voice somewhat louder than the ordinary tone of voice. He freely discussed the case with the police officers who arrested him."

"II. In the police court of the City of Washington, the judge of which also acted as examining magistrate, the petitioner was advised as to the nature of the charge against him, was asked whether he desired an attorney and said he did not desire an attorney but that he intended to enter a plea of guilty.

"III. On arraignment in the Supreme Court of the District of Columbia, the Chief Justice of the Supreme Court presiding, the defendant was again asked, on this occasion by the Chief Justice, whether he desired an attorney. In response to that question he said that he did not desire an attorney, that he intended to enter a plea of guilty. He did enter a plea of guilty. He was then sentenced."

Judge Otis dismissed the writ and remanded the petitioner to the custody of the warden.

■ 1. The question now presented is whether a writ of habeas corpus should be issued upon the present petition. In the very well-known case of Johnson v. Zerbst, 304 U.S. 458, loc. cit. 468, 58 S.Ct. 1019, loc. cit. 1025, 82 L.Ed. 1461, a majority of the justices said: "It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. If in a habeas corpus hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

The Sixth Amendment to the Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

It should be noted that the Sixth Amendment pertains to the subject of trials in criminal prosecutions and does not relate, unless by implication, to those cases where a person formally and properly accused of crime voluntarily enters a plea of guilty.

In the case of Johnson v. Zerbst, supra, there was a trial to a jury and a conviction.

In the case of Sanders v. Allen, 69 App. D.C. 307, 100 F.2d 717, 718, the petitioner alleged in her application for writ of habeas corpus that she "was suffering from

the effects of a drug which had been administered to her without her knowledge, and that at neither time was she mentally able to understand the nature of the charge against her or to make her defense * * * that on her trial she was entitled of right, under the provisions of the Fifth and Sixth Amendments of the Constitution, U.S.C.A. Const. Amends. 5, 6, to be represented by counsel, and that she was not informed of this right and did not waive it."

The Court of Appeals for the District of Columbia rather reluctantly, it appears, reversed the case and directed the issuance of the writ. In doing so, the court said: "The general rule established by a long line of decisions beginning with Ex parte Carll, 106 U.S. 521, 1 S.Ct. 535, 27 L.Ed. 288, is that power to review a conviction for crime by issuing a writ of habeas corpus is confined to the determination of the court's jurisdiction to try the petitioner for the offense and to sentence him to imprisonment. In the recent case of Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461, however, the Supreme Court said that the rule must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The court held this extension of the rule to include examination of facts outside of but not inconsistent with the record and the duty upon determination of the facts 'to "dispose of the party as law and justice require." ' "

In sending the case back for a new trial, the court said: "Following, therefore, the rule announced in Johnson v. Zerbst, we think it proper to remand the case to the District Court with instructions to issue the writ and hear the evidence and determine on the hearing whether it is true or untrue that petitioner was at the time of the arrest and trial so mentally distraught as to be unable to understand the nature of the proceeding against her and to make her defense. But the inquiry, we think, should be confined to that single subject."

The court cited the case of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. That is the well-known Scottsboro case, tried in a state court, where the defendants were tried hurriedly, without the aid of counsel, convicted and sentenced to die under circumstances that showed clearly that constitutional guaranties were denied the defendants. However, the very recent case of Walker v. Johnston, Warden, 61 S.Ct. 574, 85 L.Ed. ——, decided by the Supreme Court February 10, 1941, extended the guaranties of the Sixth Amendment to a petitioner who had entered a plea of guilty. Approved practice was the issuance of a show cause order so that upon a hearing it might be determined whether a writ should issue.

In Erwin v. Sanford, Warden, D. C., 27 F.Supp. 892, 893, it was said: "Where a person, without counsel, admits his guilt of crime and does not ask for or desire a trial, but wishes rather to plead guilty and submit himself to the mercy of the court, and freely and voluntarily enters such plea, his conduct is a competent and intelligent waiver of his constitutional right to assistance of counsel."

In Harpin v. Johnston, Warden, 109 F. 2d 434, 435, the Court of Appeals, Ninth Circuit, said in affirming the denial of a writ: "We believe the trial court properly held that appellant had failed to carry the burden resting upon him. While he now says he did not understand that he was waiving his right to counsel, and that he did not know he had such right, it must be remembered that such statements come from a confessed criminal without corroboration. The trial court was not compelled to believe his uncorroborated statement that he did not know of his right to counsel. He has, therefore, failed to overcome the presumption that he knew the law in that respect. It must be taken that he knew of his right to counsel. Despite such knowledge, he pleaded guilty after careful consideration as he stated in his letter to the trial judge before whom the indictments were pending."

In Pers v. Hudspeth, Warden, 110 F.2d 812, the Tenth Circuit Court of Appeals also considered an appeal in a habeas corpus proceeding where the appellant had entered a plea of guilty. In that case the petitioner had averred that he "was induced to enter the plea of guilty by certain threats, statements and promises made by an agent of the Secret Service of the United States which constituted coercion." He also attacked the judgment upon the further ground that he "was denied the benefit of counsel at the time he entered the plea of guilty." Concerning this the court said: "The right of a person charged with a crime to have the assistance of counsel in his defense may be waived provided it is waived intelligently, understandingly, and in a competent man-

ner. Zahn v. Hudspeth, 10 Cir., 102 F.2d 759. And ordinarily such waiver will be implied where the accused appears in court without counsel and fails to request or indicate in any manner a desire that counsel be assigned to assist him in his defense. Buckner v. Hudspeth, 10 Cir., 105 F.2d 396."

In the very recent case of Scott v. Aderhold, Warden, 116 F.2d 797, 798, Judge Bratton of the Tenth Circuit Court of Appeals quite ably, logically and concisely stated the law: "Much of the petitions and briefs of petitioner is directed to alleged facts preceding and attending the trials, and to argument that certain reasonable suppositions and deductions indicate his innocence of the crimes laid in the indictments. These contentions cannot be considered, as this court has held without deviation that ordinarily the only questions open to review in a proceeding in habeas corpus to obtain release, from confinement after conviction of a penal offense are whether the court which imposed the sentence had jurisdiction of the offense and of the person of the defendant, whether the sentence pronounced was one authorized by law, and whether the accused was denied the assistance of counsel in his defense in violation of the Sixth Amendment to the Constitution of the United States; and that other questions must be presented by appeal in the criminal case."

In the instant case, according to the petitioner's own statement, he entered a plea of guilty. When he did so the presiding judge properly relied thereon and surely the advice of an attorney is not ordinarily needed in cases where guilty pleas are entered voluntarily as it must have appeared to the judge receiving it in this case. If persons thus sentenced for crime may after the lapse of years raise questions of this kind, then there will be no end to the ever-increasing and multiplying litigation that will follow. This is a second application upon the same state of facts. Petitioner in this, his second application for a writ of habeas corpus, calls attention to the trial of almost identical issues before Judge Otis and he proffers the record in support of his current application. An examination of this record shows that Judge Otis made findings of fact with respect to the identical factual questions now raised. No appeal was taken and therefore the findings thus acquiesced in by the petitioner should have great force and weight in considering his renewed application. While res judicata does not extend to a decision on habeas corpus refusing to discharge a prisoner, yet a federal court may base its refusal to discharge on a prior refusal. Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989.

In United States ex rel. Bergdoll v. Drum, Lieutenant General, et al. 107 F.2d 897, loc. cit. 899, 129 A.L.R. 1165, the Court of Appeals, Second Circuit, said: "When the relator sued out his first writ of habeas corpus in 1920, he raised and Judge Learned Hand disposed of many of the same issues now argued before us. All the remaining issues could have been, though they were not, argued in the prior proceeding, from which no appeal was taken. It is said that strict theories of res judicata have no application in habeas corpus cases. But among the matters which may be considered and even given controlling weight is a prior refusal to discharge the relator on a like application. It is within our power to dismiss this writ in reliance on the disposition made by Judge Hand of the earlier petition."

In view of the foregoing, it will be ordered that a writ may not issue upon this petition and that said petition be dismissed.