## SMITH v. APPLE.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1925.)

No. 6745.

1. Courts ⬤⟞527½, New, vol. 17A Key-No. Series—Writ of error issued within six months gives Circuit Court of Appeals jurisdiction of cause on transfer from Supreme Court.

Under Jud. Code, § 238a as amended by Act Sept. 14, 1922 (Comp. St. Ann. Supp. 1923, § 1215a), providing for transfer of causes, if a writ of error was issued within six months after judgment, to take the cause to the Supreme Court, it was in time to give the Circuit Court of Appeals jurisdiction on transfer to that court, though it was not issued within the three months necessary to give the Supreme Court jurisdiction.

2. Courts ⬤⟞508(1)—Federal courts have jurisdiction and power to enjoin enforcement of judgment of state court.

Jud. Code, § 265 (Comp. St. § 1242), does not deprive the National courts of the same jurisdiction and power to enjoin a judgment plaintiff from enforcing an unconscionable judgment of a state court, which was procured by fraud, accident, or mistake, which they have with respect to a like judgment of a federal court.

3. Courts ⬤⟞508(1)—Federal court has jurisdiction to enjoin party from enforcing judgment of state court.

Where final judgment or decree has been entered in a state court, Jud. Code, § 265 (Comp. St. § 1242), is not a bar to a suit in a federal court to enjoin private parties to the action from enforcing such judgment or decree.

4. Courts ⬤⟞18 — In partnership accounting court may administer interest in lands in another state.

In a suit for partnership accounting, a court of one state has jurisdiction to ascertain and administer property of the partnership, though it consists of an interest in lands situated in another state.

5. Judgment ⬤⟞436, 585(4)—Defendant concluded by failure to interpose defense.

When a party has a defense which he could have interposed, and was not prevented from doing so by fraud, accident, or mistake, he cannot reserve that defense to some other time or forum and thus split up litigation, and, if he suffers through his negligent failure to interpose the defense at the proper time in the proper court, it is from his own fault, and he cannot ask relief therefrom in a court of equity.

6. Judgment ⬤⟞429—Suit to enjoin enforcement of decree held not maintainable.

Where, at the time of a suit to require a partnership accounting from the defendant in respect of a mining lease held in his name, a suit by a third party against such defendant to establish a prior lease was pending in a court of another jurisdiction, but the defendant did not plead such fact, and a decree for accounting was entered against him, he cannot maintain a suit in equity to enjoin enforcement of such decree because of a subsequent decree against him in the other suit.

7. Judgment ⬤⟞414—Bill held without equity.

A complainant, who refused to pay to his partner any part of the proceeds of mining operations on the partnership property and contested his liability, has no equity to enjoin enforcement of the decree, against him therefor.

8. Notice ⬤⟞7—Where order of court requires notice before any particular action, party is entitled to rely on it.

Parties properly in court must take notice of steps in the litigation, but, where an order of

court requires notice before specified action is taken, the parties have a right to rely on the giving of such notice, and are not bound by such action taken without notice and without their actual knowledge.

**9. Appeal and error ⬡288—Failure to move for new trial held waiver of want of notice.**

Failure of a defendant to move for new trial after decision against him, based on an ex parte hearing without notice required by a previous order, and without his knowledge, *held* a waiver of want of notice, where under the state statute the objection could have been presented within a year after the trial.

**10. Judgment ⬡713(2)—Conclusive as to all matters which could properly have been litigated.**

Where a court has jurisdiction of a cause and of the parties, a final decision by it is binding upon all parties thereto, as to all issues and matters, actually litigated therein, or which could have been properly litigated therein.

Appeal from the District Court of the United States for the District of Kansas Transferred from the Supreme Court of the United States; John C. Pollock, Judge.

Suit by Wesley M. Smith against Walter T. Apple. From a decree dismissing the bill, complainant appeals. Affirmed.

John S. Dean, of Topeka, Kan. (Harry W. Colmery, of Topeka, Kan., and A. Scott Thompson, of Miami, Okl., on the brief), for appellant.

Edward E. Sapp and Eddwin B. Morgan, both of Galena, Kan., for appellee.

Before STONE and KENYON, Circuit Judges, and SCOTT, District Judge.

STONE, Circuit Judge. This is a bill by Wesley M. Smith against Walter T. Apple, brought in the United States Court for the District of Kansas, to enjoin the prosecution by Apple of a suit pending in that court against G. L. Coleman, and to enjoin enforcement of two decrees of the district court of Cherokee county, Kan., rendered on December 24, 1918, and September 7, 1920, respectively, in an action brought by Apple against Smith. From dismissal of the bill, upon motion, plaintiff brings this appeal.

### Motion to Dismiss Appeal.

[1] Appellee has filed a motion to dismiss this appeal because not brought within time. Within less than six months after the decree herein, an appeal was taken to the Supreme Court on the theory that only a question of jurisdiction was involved. That court determined otherwise (264 U. S. 274, 44 S. Ct. 311, 68 L. Ed. 678), and ordered the appeal transferred to this court under the Transfer Act, Sept. 14, 1922, c. 305 (42 Stat. L. 837, Judicial Code, § 238a [Comp. St. Ann. Supp. 1923, § 1215a]). Because of this erroneous appeal to the Supreme Court, the record was not filed in this court until more than six months after entry of the decree. This delay is the basis of the motion to dismiss. The point is not well taken. The Transfer Act provides that, where an appeal or writ of error has been taken or sued out to the wrong reviewing court (Supreme Court or Court of Appeals), the case shall be transferred to the proper court "which shall thereupon be possessed of the same and shall proceed to the determination thereof, with the same force and effect as if such appeal or writ of error had been duly taken to, or issued out of the court to which it is so transferred." Under this statute, the timeliness of the appeal or writ of error is determined by the lapse of time between entry of the decree or judgment and taking the appeal or suing out the writ. If such period does not exceed three months the appeal or writ is in time for the Supreme Court; if not more than six months, it is in time for the Court of Appeals; if within six months but exceeding three, it is in time for the Court of Appeals but not for the Supreme Court. McMillan Co. v. Abernathy, 263 U. S. 438, 443, 44 S. Ct. 200, 68 L. Ed. 378. As this appeal was taken within six months of entry of the decree, it is within time. Therefore the motion to dismiss should be denied.

### Merits.

[2] The trial court sustained the motion to dismiss because he thought the bill was an attempt to enjoin the proceedings of a state court in violation of section 265 of the Judicial Code (36 Stat. L. 1162, Rev. Stat. 720 [Comp. St. § 1242]), which requires that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Of the three matters sought to be enjoined by the bill, one is an action pending in the United States court and the other two are judgments in the state court. Of course, section 265 has no application to the first. Also, whatever may be the application of this section to actions in the state court *before final* judgment therein, it is certain that the statute does not prohibit the enforcement of such a final judgment by injunction in the federal courts. Among other grounds for exercising this power over

such final judgments are the protection of the proper jurisdiction and judicial acts of the federal courts (Julian v. Central Trust Co., 193 U. S. 112, 24 S. Ct. 399, 48 L. Ed. 629), entire lack of jurisdiction in the state court (Simon v. Southern Railway Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492), where the judgment would be subject to collateral attack because obtained through fraud (Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Simon v. Southern Railway Co., 236 U. S. 115, 128, 35 S. Ct. 255, 59 L. Ed. 492), or accident or mistake (National Surety Co. v. State Bank, 120 F. 593, 56 C. C. A. 657, 61 L. R. A. 394 [8th C. C. A.]), or where enforcement would be "contrary to recognized principles of equity and the standards of good conscience" (Wells Fargo & Co. v. Taylor, 254 U. S. 175, 183, 41 S. Ct. 93, 65 L. Ed. 205). In short, the national courts "have the same jurisdiction and power to enjoin a judgment plaintiff from enforcing an unconscionable judgment of a state court, which has been procured by fraud, accident or mistake, that they have to restrain him from collecting a like judgment of a federal court." National Surety Co. v. State Bank, 120 F. 593, 602, 56 C. C. A. 657, 61 L. R. A. 394, quoted in Wells Fargo & Co. v. Taylor, 254 U. S. 175, 185, 41 S. Ct. 93, 65 L. Ed. 205.

[3] The statute is no bar where final decree or judgment has been entered in the state court and where the bill is not against an officer of the court but only against private parties to the action. National Surety Co. v. State Bank, supra, p. 601 (56 C. C. A. 657); Leathe v. Thomas, 97 F. 138, 38 C. C. A. 75 (7th C. C. A.). This bill seeks to enjoin Apple, plaintiff in the state court suit, from enforcing final decrees secured by him in that suit. It would seem, therefore, that section 265 would not bar this bill in so far as it relates to the state court judgments.

As one ground of the motion is "insufficiency of facts to constitute a valid cause of action in equity," it is our duty to examine the amended bill to ascertain if it contains allegations which, if proven, would entitle appellant to equitable relief.

Appellant contends that his amended bill presents three grounds, any one of which should entitle him to the relief sought. Of these three grounds, two concern the pending suit in the federal court and the two decrees in the state court. The third concerns only the second decree in the state court. The first two are (1) that the state court had no jurisdiction of the subject-matter there and here involved, and (2) that an ad-

6 F.(2d)—36

judication (subsequent to the above decrees) of the title to the property involved in the litigation between Smith and Apple had so changed the situation that it would be highly inequitable to enforce the decrees. The third of the above grounds is that a hearing was had and the second decree in the state court entered without necessary notice thereof to appellant.

With these three points in mind, we turn to examine the amended bill to ascertain if it states sufficient facts to invoke the exercise of equity. The facts shown by the amended bill are as follows:

In November, 1912, Smith secured from Leander J. Fish, a Quapaw Indian, a ten-year mining lease on restricted land and in February, 1915, a ten-year mining lease on other land for himself and one J. E. Pottorff from Z. A. Douthat. Both of these leased tracts were located in Ottawa county, Okl. Immediately after securing these leases, the lessees began mining operations on the properties and have continued the same since. A large value of ore has been mined and disposed of and the proceeds taken by these lessees. July 12, 1916, Apple filed an action in the state district court of Cherokee county, Kan., against Smith, claiming that the two were partners in the agricultural and mineral exploitation of lands in Ottawa county, Okl.; that Smith had taken title in his own name to certain mining leases therein, including the Fish and Douthat properties, had exploited them and had not accounted to Apple therefor in the partnership. Apple prayed a disclosure; a declaration of an undivided one-half interest in all such properties to be in him; for a dissolution of the business; for an accounting and for a sale and division of the property between the two partners. Smith contested this action, denying the partnership or any interest of Apple in the leases held in the name of Smith and challenging the jurisdiction of the Kansas court to adjudicate concerning title to any interests in Oklahoma lands or the proceeds derived therefrom. December 24, 1918, that court entered a decree declaring the partnership and finding an indebtedness thereunder from Smith to Apple of $55,042.03½ arising, in the main, as the results of these mineral operations; declaring an undivided equal ownership in the above, as well as other, leases; providing for appointment of a receiver to collect the royalties accruing from the leases, and requiring mutual assignment of these leases to the receiver so that he might sell the same and divide the proceeds between the two parties.

Smith took an appeal from the above decree to the state Supreme Court, and gave a supersedeas bond upon which Pottorff and one G. L. Coleman were sureties.

The Supreme Court of Kansas affirmed the main provisions of this decree, modifying it by eliminating the provision for the receivership and requiring the parties to make assignments of all property held in their respective individual names to Apple and Smith, as copartners. 105 Kan. 732, 185 P. 903; 106 Kan. 717, 190 P. 8. The mandate from the Supreme Court is dated May 8, 1920. The judgment entered upon this mandate required the referee to take an accounting of the royalties received since the former accounting and that if either of the parties did not, prior to the taking of the accounting by the referee, make the above assignment to the partnership of the interests held by them, individually, in the leases and mining rights, the referee should take an accounting of the value of such leases and rights. This mandate contained the requirement following: " * * * Said referee to give due notice to the respective parties or their attorneys of the time and place of taking said further accounting."

Without notice and without the knowledge of Smith, the referee thereafter held such accounting, and, as Smith had refused to make the required assignment, held hearings upon and reported as to both royalties received since the last accounting and the value of the leases and mining rights. Upon this report, the state court entered a decree on September 7, 1920, the here essential part of that decree being as follows: " * * * for the royalties received by the defendant since the accounting heretofore had herein, over and above the royalties received by the plaintiff since the date of said accounting, together with the value of the interest of the plaintiff in the leasehold interest held by said defendant over and above the value of the leasehold interests held by the plaintiff. The court further finds that the defendant did not, prior to the date of accounting before the referee, file with the clerk of this court assignments or other conveyances of the leasehold interest so held by him, and in his name belonging to the firm of Apple & Smith, as directed by the judgment and decree of said court." No appeal has been taken from that decree and it has become final.

As Smith made no payment under the first decree, Apple brought suit upon the above supersedeas bond. That suit was removed to the United States Court for the District of Kansas and is identified as Apple v. Coleman.

It is the enforcement of the above two decrees in the district court of Cherokee county, Kan., and of the prosecution of the above suit upon the supersedeas bond which is sought to be enjoined by this amended bill.

About a month after the Supreme Court of Kansas had handed down its last opinion, Smith began actions in the state district court of Ottawa county, Okl., to quiet his title as to the Fish and Douthat leases. These suits were against Apple, who appeared and filed an answer, setting up the above adjudication in Kansas. After the second decree in the Kansas court wherein the value of the leases was found and Apple given a recovery for one-half thereof, Apple filed, in the Oklahoma suit, formal disclaimers of title to the lands involved. Thereafter the Oklahoma state court entered a decree finding against Apple and that the title was and always had been in Smith alone.

At the time Apple filed his action on the partnership in the Cherokee county district court, there was pending in this court an appeal in an action by one W. P. McCullough against Smith, wherein McCullough claimed title to the larger part of the Fish land. That action was twice in this court, finally resulting in a decree adjudging the title in McCullough. 243 F. 823, 156 C. C. A. 335; 285 F. 698. The decree in the federal District Court for the Eastern District of Oklahoma adjudicating this title to McCullough is dated October 30, 1920. Since that date, McCullough has filed in the state district court for Ottawa county, Okl., an action against Smith, seeking to recover $455,000 as the value of all ore mined by Smith and for damages from mining operations. This action is yet pending.

At some time, not stated, one Theodore P. Emmons filed a suit in the district court of Ottawa county, Okl., against Smith and others, claiming title to the Fish land.

Since the filing of the bill in this action, the suit by Apple on the supersedeas bond has been prosecuted to judgment, brought to this court upon writ of error and the judgment according recovery to Apple affirmed. 298 F. 718. Mandate upon that affirmance has been withheld until this appeal could be determined.

[4] I. The first of the three points urged by appellant as the basis for equitable relief is that the Kansas state court had no jurisdiction to determine titles or interests in lands located in Oklahoma or to adjudge the proceeds therefrom. The facts upon

which this contention is based are sufficiently stated in this amended bill but there is no equity in the situation developed from those facts. This precise contention was presented to and considered by the Kansas District and Supreme Court and also by this court in the suit upon the supersedeas bond. We are satisfied with the result and the reasons in the Coleman Case (298 F. 718).

[5, 6] II. The second contention of appellant is that it would be unconscionable to require him, under the two Kansas decrees, to pay over to Apple one-half of the profits from mining and one-half of the value of the leases when an important portion of the land covered by those leases has been adjudged not the property of Smith under the leases and therefore not partnership property, and since he is faced with an action for recovery of the value of the ore taken therefrom, and since he is confronted with another action attacking his title to other portions of the land leased. Obviously, under ordinary circumstances, it would be repellent to suggest that Smith should have to pay this money more than once. Equity would promptly intervene to prevent such a result. However, the circumstances surrounding this immediate matter must be examined to ascertain whether equity should here intervene. With full knowledge, during the entire course of the Kansas litigation, of the pendency of the action by McCullough, Smith made no effort to bring that situation to the attention of the Kansas court and have it considered in the decree which that court might enter. If it is equitable for this court to prevent the enforcement of those decrees because of the McCullough litigation and its result, it would have been equally equitable for the Kansas court to have cared for that situation in its decree. In short, a consideration of such matter would have been within the jurisdiction of the Kansas court. If it be said that the result of the McCullough litigation was not known until after entry of the second decree, it may be well answered that the same argument of inequity would apply during the pendency of the McCullough action as after its unfavorable determination. If the pendency of the suit had been presented to the Kansas court and that court had failed to protect Smith in that regard, there would be much strength in his present contention; but when a party has a defense which he could have interposed, and is not prevented from so doing by fraud, accident or mistake, he cannot reserve that defense to some other time or forum and thus split up litigation. If he suffers

through his negligent failure to interpose the defense at the proper time and in the proper court, it is from his own fault and he cannot ask relief therefrom in a court of equity. The accounting action filed by McCullough would, of course, be governed by what has been said above concerning the main suit brought by him, because, if the suit for title could not have the effect sought by appellant, obviously the accounting action, based upon and resulting from the title suit, could not have an effect denied the main suit. There is no statement in the bill as to when the Emmons action was filed and we cannot presume that it was filed after the Kansas decrees.

[7] Again, there is no allegation in the bill that Apple is insolvent or that he could not be made to respond to Smith if Smith were compelled to and did repay moneys derived from these mining operations. The real position of Smith in this matter is not such as appeals to the conscience of a chancellor. He stands before this court as a partner who has denied his obligation as such, who has attempted to defraud his partner out of the partnership funds, who has never at any time made any offer to meet those obligations, who still retains and enjoys the fruits of the partnership and who has always and yet does bitterly contest paying any amount to Apple. He states no equity so far as these suits are concerned.

[8] III. The allegations of the bill concerning lack of notice and an opportunity to be heard by the referee and lack of knowledge of proceedings before the referee and by the Kansas state court in entering the second decree upon the report which resulted from such hearing are persuasive. The requirement, above quoted from the order on the mandate, that the referee should give notice of the hearings is very definite and Smith had the right to rely upon that notice being given. Appellee attempts to meet this contention in four ways as follows: (a) By questioning the sufficiency of the allegations of lack of notice or knowledge in the amended bill; (b) by contending that it was the duty of Smith to keep posted on the progress of the litigation; (c) that the notice was as a matter of fact given; (d) that, even though the hearings and orders were entered without notice, yet Smith had the right to present this defect to the Kansas court in a motion for new trial, and failing to do so must be regarded as waiving it. As to the first contention, the allegations of the amended bill are very clear. These allegations are that the proceedings were "without any no-

tice, actual or constructive, to this complainant and without the personal or published service of any notice or summons." It is also alleged that the hearings before the referee were "ex parte" and were "in the absence of this complainant and without his knowledge." It is also alleged that the decree in accordance with the report of the referee was entered "ex parte and without any knowledge or notice to this complainant." Nor is the second claim of appellee well taken. While it is true that parties properly in court must take notice of steps in the litigation, yet where an order of court requires notice before specified action be taken, the parties have a right to rely upon the giving of that notice and are not bound by such action taken without notice and without their actual knowledge. The claim that the notice was actually given is of course a matter of fact to be pleaded in the answer to the amended complaint. It is expressly alleged otherwise in the amended complaint.

[9] The contention that appellant has waived his right to object to lack of notice of the second hearing, if he had knowledge of such within the time for filing a motion for new trial in the state court, seems well taken.

[10] Where a court has jurisdiction of a cause and of the parties, a final decision by it is binding upon all parties thereto as to all issues and matters actually litigated therein or which could have been properly litigated therein. Sapulpa Petroleum Co. v. McCray, 4 F.(2d) 645 (this court); Commercial Elec. Supply Co. v. Curtis, 288 F. 657, 661 (this court); Hottelet Co. v. Garden City Milling Co., 285 F. 693, 695 (this court); Pierce v. National Bank of Commerce, 268 F. 487, 495 (this court). To hold otherwise would be to encourage endless splitting of causes of action and would make litigation interminable. This is not the case of judgment against one who was never properly served and therefore not bound nor estopped by any action, order or judgment which might be taken or made in the cause. Here appellant was duly served and an active participant in the litigation. This alleged lack of notice was an error in the course of the litigation. The state statutes provided that such errors might be presented in a motion for new trial (Gen. Stat. Kan. 1915, § 7205), and that, where they were not discovered within the three days allowed for filing the ordinary motion for new trial, they might be presented within one year after the trial and not later than the second term following the judgment term. Gen. Stat. Kan. 1915, §§

7208, 7210. We are not presented with the situation of a discovery after the above statutory period and make no decision thereon. To avoid the effect of the above rule of law and the above-cited state statutes, it would be necessary for appellant to allege that he had no knowledge of the hearings and orders within the above statutory period. This he has not done. We think this point well taken and that the amended petition was properly dismissed because it stated no cause of action.

The decree should be and is affirmed.

The mandate in the case of G. L. Coleman v. W. T. Apple, suspended to await determination of this appeal, will issue forthwith.