## PIEDMONT ICE & COAL CO. v. AMERICAN SERVICE CO.

### No. 4936.

Circuit Court of Appeals, Fourth Circuit.

Aug. 7, 1942.

Robert H. Frazier, of Greensboro, N. C. (Clifford Frazier, of Greensboro, N. C., on the brief), for appellant.

Julius C. Smith, of Greensboro, N. C. (Smith, Wharton & Jordan, of Greensboro, N. C., and Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., on the brief), for appellee.

Before DOBIE and NORTHCOTT, Circuit Judges, and TIMMERMAN, District Judge.

DOBIE, Circuit Judge.

On or about February 1, 1929, the Piedmont Ice & Coal Company (hereinafter called Piedmont), a North Carolina corporation with its principal office at Greensboro, sold and conveyed its ice and coal plant in Greensboro to Community Ice & Utilities Company (hereinafter called Community Utilities) for $200,000 in cash, and Community Utilities agreed further to take over and pay for the current inventory of materials then on hand. Almost simultaneously with the transaction, Community Utilities, for a proper consideration, sold and conveyed to Community Ice Company (hereinafter called Community Ice), a number of ice plants, including the plant of Piedmont. Community Ice duly received the current inventory transferred to Community Utilities by Piedmont; Community Ice became duly obligated to pay for the inventory thus received; and

Community Ice proceeded to run the business, using up the inventory in the due course of business.

Certain controversies arose between Piedmont and Community Ice and Community Ice did not pay Piedmont for the inventory. Piedmont, accordingly, on August 31, 1929, instituted a civil action against Community Ice, in the Superior Court of Guilford County, North Carolina. This action, based on the failure of Community Ice to pay Piedmont for the inventory, was thus instituted upon a simple, open, unsecured, contract claim. For some reason, this action was not brought up for trial until the summer of 1937, and, at the October Term (1937) of the Superior Court (more than 8 years after the action was begun), Piedmont duly recovered a judgment in its favor and against Community Ice.

American Service Company (hereinafter called American) was a Maryland corporation, domesticated in North Carolina, with offices in Greensboro. Many years prior to the date of the above judgment secured by Piedmont against Community Ice, American had acquired all of the outstanding stock and all of the outstanding bonds of Community Ice. In the Autumn of 1929, shortly after the institution of the action by Piedmont against Community Ice, American took a conveyance of all of the properties of Community Ice located in a number of states, including the Piedmont plant in Greensboro, which American continuously and openly operated. So we must presume that the officers of Piedmont knew of this transfer, quite soon after the date of the transfer, though they professed complete ignorance at that time, of the terms and conditions of this conveyance. It is worthy of note, too, that not until the institution of the instant action by Piedmont against American, did Piedmont make any claim against American or make any contention that American was in any way liable to Piedmont; nor did Piedmont, at any time, either make or attempt to make American a party to the action instituted by Piedmont against Community Ice.

In 1934 (approximately 5 years after the conveyances of the Piedmont plant, approximately 5 years after the institution of the action by Piedmont against Community Ice, approximately 3 years before Piedmont secured a judgment in this action against Community Ice, and approximately 5 years before the instant action was instituted by Piedmont against American) American filed a proceeding for reorganization, under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in the United States District Court for the Western Division of the Western District of Missouri. No actual or special notice of this proceeding was given by American to Piedmont. But American did duly publish in the Greensboro Daily News proper notice of the pendency of this bankruptcy proceeding together with the requirement that all claims against American must be filed. Piedmont filed no claim in the bankruptcy proceeding. American failed to list in the bankruptcy proceeding any debt or claim of Piedmont. We recur again to two facts previously stated: (1) prior to the institution of the instant action in 1941, Piedmont never made any claim against American; (2) Greensboro is the city in which are located the head-office of Piedmont and the plant in question. In December, 1934, a final decree in the reorganization proceeding of American was duly entered by the federal District Court in Missouri.

In the instant action (instituted in 1939) Piedmont attempts to excuse any lateness in the assertion of its claim against American by a statement that Piedmont was kept in ignorance of any right against American by the fraud of American and by the failure of American either to give Piedmont actual notice of the bankruptcy proceeding or to include Piedmont's claim in the schedule of debts filed in the bankruptcy proceeding by American. And Piedmont, in the instant action, contends that American held in trust the property conveyed to it by Community Ice for the payment of the debt of Piedmont. Further, Piedmont insists that the conveyance by Community Ice to American was made with intent to defraud the creditors of Community Ice.

Judge Hayes in the District Court, held that the service of notice by publication in the Greensboro Daily News was sufficient, that the final decree of the bankruptcy court in Missouri constituted a bar to the right of Piedmont to prosecute the instant action, and entered judgment dismissing the action of Piedmont. From that judgment, Piedmont has duly prosecuted an appeal.

We think this ruling is correct and that the instant case is controlled by our deci-

sion in American Service Co. v. Henderson, 4 Cir., 120 F.2d 525, 135 A.L.R. 1414. Piedmont attempts to distinguish the instant action from that case on three grounds: (1) there the debtor had full knowledge of the bankruptcy, with no finding of fraud; here, the debtor had no such knowledge, due to the fraud of the bankrupt; (2) there notice of the bankruptcy proceedings was sent by mail to, and was received by, the debtor; here no such notice was sent by the bankrupt to the debtor, and the only notice was the publication in the Greensboro Daily News; (3) there, the debtor could not trace any specific trust property into the hands of the bankrupt; here, the debtor can trace such specific property, held by the bankrupt in trust for the payment of the debtor's judgment.

We certainly have no quarrel with Piedmont's contention that the federal courts should bend every effort to prevent the bankruptcy statutes from being used as a cloak for fraud. Very heartily do we agree with Mr. Justice Frankfurter in his dissenting opinion in United States v. Bethlehem Steel Corp., 315 U.S. 289, 312, 313, 62 S.Ct. 581, 593, 86 L.Ed. 855: " * * * the function of the judiciary is not so limited that it must sanction the use of the federal courts as instruments of injustice in disregard of moral and equitable principles which have been part of the law for centuries."

■ But there is another side to the picture. Interest rei publicae ut sit finis litium is an ancient and salutary maxim.

In American Service Co. v. Henderson, 4 Cir., 120 F.2d 525, 135 A.L.R. 1414, we pointed out the broad provisions of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and its underlying philosophy. Stale claims, set up long after the final decree in reorganizations under this section, are very rigidly to be discouraged. The conveyance by Community Ice to American of the Piedmont plant in Greensboro was in 1929 and American continuously operated this plant thereafter. We cannot think that Piedmont knew nothing of this transfer. At that time Piedmont had against Community only an open, unsecured, contract claim. Yet Piedmont seems to have made no effort to ascertain the terms, conditions and circumstances of this transfer or to apprise itself of the existence, nature or extent of its rights against American.

■ The action by Piedmont against Community Ice (hotly contested by Community Ice) was not brought to trial, and did not ripen into judgment until the last part of 1937, nearly 3 years after the final decree in the reorganization proceedings. The instant action was not instituted until 1939, nearly 5 years after that same final decree. And never before the institution of the instant action had Piedmont made any contention of any liability to it on the part of American. We think it fair to presume that Piedmont knew, we have no hesitation in holding that Piedmont should have known, of the pendency of the reorganization proceeding. Under the circumstances, we recognize no legal duty on the part of American either to give actual notice (apart from the published notice in the Greensboro Daily News) to Piedmont of the reorganization proceedings or to list Piedmont as a debtor, when no claim against Community Ice had ever been then asserted by Piedmont. Indeed, the institution of the instant action is the first attempt by Piedmont to assert any claim against American.

Courts are, as here, frequently faced with the difficult and delicate task of balancing conflicting social interests, of weighing these interests fairly and of appraising them impartially. Then must the court decide which is the greater interest that is to be secured, which is the lesser interest that must be sacrificed. Under these categories, we think the lesser interest here is that of Piedmont. Its dilatory tactics leave us rather cold to its almost passionate appeal for judicial help. We believe Judge Hayes arrived at an eminently sound decision and correctly applied the doctrine we laid down in American Service Co. v. Henderson, 4 Cir., 120 F.2d 525, 135 A.L.R. 1414.

We, accordingly, affirm the judgment of the District Court.

Affirmed.