## In re NEW YORK, N. H. & H. R. CO.

### CITY OF NEW YORK v. NEW YORK, N. H. & H. R. CO.

No. 213, Docket 22293.

United States Court of Appeals Second Circuit.

Argued April 17, 1952.

Decided June 5, 1952.

Frank, Circuit Judge, dissented.

Denis M. Hurley, Corporation Counsel, New York City (Seymour B. Quel, Meyer Scheps and Anthony Curreri, New York City, of counsel), for appellant.

Edward R. Brumley, New York City (Robert M. Peet, New York City, of counsel), for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

PER CURIAM.

Order affirmed on the opinion of the District Court, 105 F.Supp. 413.

FRANK, Circuit Judge (dissenting).

The district judge in his opinion, and my colleagues in adopting and affirming it, have, I think, overlooked the crucial issues which are these: Subdivision c(8) of § 77—11 U.S.C.A. § 205, sub. c(8)—requires that the "judge shall cause reasonable notice" to be given, "by publication or otherwise," to creditors "of the period in which claims may be filed," after which period, under sub. c(7), no claim not filed "may participate except on order for cause shown". Is it "reasonable" for the judge in a § 77 proceeding to direct the bankruptcy trustees to give no such notice, other than by publication, to a known creditor? If not, and if no other notice (so to file claims) is given such a known creditor, will the final decree in reorganization destroy the rights of such a creditor whose claim is not covered by the reorganization plan, simply because he has not filed, or sought to file, a claim? As I think the answer to both

questions is "No," I would reverse in this case. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, Smith v. Apple, 8 Cir., 6 F.2d 559, 564, and other cases discussed infra.

The debtor here was the former New Haven Railroad Company. Its reorganization proceedings took place in the United States District Court for the District of Connecticut. The claimant is the City of New York. Its claims consist of tax liens for assessments on some of the debtor's real property in New York City. Because of their nature, the railroad was never personally liable on these claims; they were enforceable only against the specific pieces of real estate assessed. In most instances, the City does not even know the names of the owners of the real estate assessed. For that reason, and because of the expense of collecting by judicial procedure the large number of such claims, the City, since there is no statute of limitations running against the liens, normally collects its due on the sale of the assessed property when the owner seeks to pass a clear title to the purchaser.

Here, the debtor and its reorganization trustees, knowing of the City's claims and, of course, knowing the City's address, never gave the City actual notice, by mail or word of mouth, that on January 4, 1936 the bankruptcy court had entered a bar order, Order No. 32, requiring all creditors to file their claims before May 1, 1936, or have them wiped out. The only notice of the bar order to the City was by newspaper publication which did not name the City and which never came to the City's attention. After the expiration of the period fixed in the bar order, the City (in some way not explained) heard of the pending reorganization proceedings, but never learned of the bar order. In 1936, 1940 and 1942 the trustees had dealings with the City concerning some of its tax lien claims which were then paid in full or (by compromise) in part—without the City filing any claim in, or appearing in, the reorganization proceedings, although those claims were of the same kind as the claims here in dispute. The trustees then

never even hinted to the City of the making of the bar order or suggested that the City's remaining $134,000 of claims would be destroyed if the City did not, by leave of court, file claims in the proceedings.

1. Undeniably, there was a clear violation in these proceedings of the notice requirements of § 77, requirements designed for the protection of creditors. This chapter of non-compliance begins with a failure to comply with subdivision c(4) of § 77. That subdivision says that the judge shall direct "the * * *. trustees * * * to * * * file with the court a list of all known * * * creditors of the debtor, and the * * * character of their debts, claims, and securities, and the last known post-office address or place of business of each * * * creditor." The judge never directed the filing of such a list. No list was ever filed containing the name of the City or referring to its claims, although the new railroad freely admits that the debtor and the trustees knew about them.

The new company argues, unreasonably I think, that, even if such a list had been prepared, the City's name would have been omitted and properly so because the debtor and the trustees had, from the beginning, disputed the validity of the City's claims. The error of the argument is that the statute clearly contemplates the inclusion in that list of doubtful or disputed claims, since it specifically immunizes the debtor or its trustees from any bad effects therefrom: "The contents of such lists shall not", says subdivision c(4), "constitute admissions * * * in a proceeding under this section or otherwise." But this argument does lead to a suspicion that the real reason behind the trustees' silence may just possibly have been that something would happen exactly like that which did happen here, i. e., the City, not receiving notice of the bar order, would not file claims; its unfiled claims would be bypassed in the reorganization plan; and the new company would then assert that, by the final decree, those claims were expunged.

The failure of the judge to direct the trustees to file a proper list containing the

names and addresses of known creditors, and the failure of the trustees to file one, was followed by a further signal failure to comply with the statute, and led to the fact that the City was not properly notified, and did not learn, of the bar order: When the judge came to ordering notice to creditors of that bar order, he did not provide that notice by mail be given to all known creditors with known addresses (a class which included the City). Instead, he adopted the following classification: (1) notice by mail to be given all creditors who had entered appearances up to that date (whether or not their claims had been allowed or were considered "valid") and also to certain prominent indenture trustees whose liens were junior to the City's; (2) notice by publication to all other creditors, i. e., all non-appearing creditors—whether known or unknown.

The judge, in effect, substituted, as far as notice of the bar order was concerned, "appearing" creditors for "known" creditors. Section 77, sub. c(8), in contrast, requires that "reasonable notice of the period in which claims may be filed, * * * be given creditors * * *." It is not by accident that the provision for a list of "known" creditors, § 77, sub. c(4), precedes § 77, sub. c(8): Congress intended that the judge should cause appropriate notice to be given to all "known" creditors, and contemplated that such notice would be different from that given unknown creditors.

Subdivision c(8) does not, I think, sanction an arbitrary distinction, as regards such notice, between appearing and non-appearing creditors. Such a distinction is unreasonable. It runs exactly contrary to the giving of "reasonable" notice. For obviously it is not the "appearing" creditors who are most in need of notice of the bar order. Their appearances show they already have an active interest in the proceedings. It is precisely those known creditors who have not appeared—creditors like the city—who need the notice, prescribed by statute, of the deadline for filing claims.

2. It is most important, then, that notice by publication does not constitute "reasonable notice" in circumstances like these, where the creditors are known and can easily be notified by mail. This has been definitively settled by Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865. There a New York statute provided for the cutting off of claims to a common trust fund after notice, by publication only, to beneficiaries about a proceeding brought by the trustee to settle accounts. It was held unconstitutional as to those beneficiaries whose names and addresses were known, and who could be easily notified by mail. Said the Supreme Court: " * * * when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. * * * It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint. * * * Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency. The trustee has on its books the names and addresses of the income beneficiaries represented by appellant, and we find no tenable ground for dispensing with a serious effort to inform them per-

sonally of the accounting, at least by ordinary mail to the record addresses."

The Mullane case summarized what the Supreme Court had been saying for a long time before. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 633, 71 L.Ed. 1091, upheld a non-resident motorist statute, providing for service on the non-resident by serving the registrar in the state where the accident occurred and notifying the non-resident motorist by registered mail, because "It is required that he (the non-resident) shall actually receive and receipt for notice of the service and a copy of the process." Cf. Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (where a non-resident motorist statute not providing for mail notification was held lacking in due process); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. See also 2 Moore, Federal Practice, par. 4.16 (2d ed. 1948). In McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (holding that notice by publication was inadequate to secure jurisdiction over a defendant technically domiciled in Texas but who had actually gone elsewhere to establish residence, although in the same circumstances personal service at his Texas abode might have sufficed), Holmes, J., said: "great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact. * * * To dispense with personal service the substitute that is most likely to reach the defendant is the least that ought to be required if * * * justice is to be done." For constructive notice is a fiction.[1]

3. Although the City did not receive reasonable notice of the bar order because the district judge neglected to comply with subdivisions c(4) and c(8), the judge now holds (with my colleagues' approval) that the City has lost its rights because it neglected to follow up constructive notice. The judge rests this harsh conclusion on the fact that the City learned, in an unexplained way, not of the bar order, mind

you, but merely of the existence of the reorganization, in 1936 (as near as we can tell, after the end of the original period for filing claims but in time to apply to the court for late permission to file). However, without some specific statutory provision imputing knowledge of the bar order to anyone merely having knowledge of the reorganization proceedings, I think the City cannot be charged with notice of whatever it could have found, if it had carefully examined the reorganization records.

In the first place, consider the practical aspects of my colleagues' ruling: If the City is thus charged, its burden will be insupportable. It has no system by which it can tell who are the proper owners of each piece of land against which local assessments may be laid. To find that out, it would have to search the titles of each piece. More, if my colleagues' ruling stands, the City will be responsible for recognizing the names of all such property owners in the notices of bankruptcy proceedings, and for tracking down the records in those proceedings all over the United States, looking for bar orders. The waste of time and energy seems pointless when the debtor's trustees know the City is a creditor entitled to notice, and have only to include the City in the list of known creditors to be notified of the bar order by mail.

But let us disregard this argument of impracticality, and consider the singular judicial attitude here displayed: (1) The statute expressly commanded the court to give a known creditor "reasonable notice" of the bar order, and that means notice by mail. (2) The court did not obey that express command. (3) Yet the court, having neglected its own express duty, now excuses that neglect by fictionally imputing to the creditor "constructive notice" of the bar order, holding that the creditor was fatally negligent in not following up the knowledge, fortuitously obtained, that the reorganization proceedings existed, to the point where the creditor would find in the

---

1. See Schoedel v. State Bank of Newburg, 245 Wis. 74, 76, 13 N.W.2d 534, 535, 152 A.L.R. 459. "At the outset, attention should be called to the fact that constructive notice is in point of literal fact neither notice nor knowledge. * * * The term 'constructive' is the mere trademark of a fiction."

court files the notice to file claims. In the circumstances, to hold the creditor negligent seems to me strikingly unjust: As the statute called for actual notice of the bar order, the creditor ought not be asked to act on less, especially since (as I shall point out later) the doctrine of judge-made constructive notice depends on gross negligence by the person said to be charged with such notice.

(I must add, parenthetically, that, in referring to the trial judge's neglect, I am not taking a superior attitude: Any judge, being a man, may err at times; and certainly my memory of my own judicial career shows me that I have done so. But all that is beside the point here.)

Here, we have a case where, by chance, the creditor came to hear of the proceedings; we may assume that the creditor was familiar with the statute; the statute told him that the court would order that he be given specific notice of the time to file his claims. Was it not reasonable for him to wait to file until he received such a notice? Why, then, call him negligent for not filing when he did not receive such notice required by the statute?

Apposite is Smith v. Apple, 8 Cir., 6 F.2d 559, 564. There a state-court ordered a certain further step to be taken in a suit within the near future and on notice to the parties to the suit. This further step was taken without any notice to one of the parties; and a decree against that party was entered accordingly. The Eighth Circuit said: "While it is true that parties properly in court must take notice of steps in the litigation, yet where an order of court requires notice before specified action be taken, the parties have a right to rely upon the giving of that notice and are not bound by such action taken without notice and without their actual knowledge." *A fortiori*, mere knowledge that there is pending a long drawn-out proceeding ought not be deemed to give notice of a step in

that proceeding when specific notice of that step is statutorily required but not given.[2]

In the Mullane case, the statute provided for notice by mail to the known beneficiaries at the time when the trustee first invested in the common fund; this notice disclosed that there would be future judicial accountings by the trustee. Yet the Supreme Court held that this initial mailed notice did not excuse the omission of a notice by mail to known beneficiaries shortly before each subsequent judicial accounting.

Suggestive, too, are cases holding that, when a statute prescribes a particular form of notice which is constitutionally invalid, the defect is not cured by notice of a kind not provided in the statute. See, e.g., Wuchter v. Pizzutti, 276 U.S. 13, 24, 48 S.Ct. 259, 262, 72 L.Ed. 446: "But it is said that the defendant here had actual notice by service out of New Jersey in Pennsylvania. He did not, however, appear in the cause and such notice was not required by the statute. Not having been directed by the statute it cannot, therefore, supply * * * validity to the statute or to service under it."[3]

*When, as here, the creditor, who knows of the reorganization proceeding under § 77, also knows, by reading § 77, that he is not to file a claim until notified to do so, it is curious to hold that his knowledge of the reorganization proceeding, without more, constitutes notice to file his claim, so that, if he does not file, his claim is expunged. Yet that is what my colleagues hold.*

In so holding, my colleagues decide that the provisions of subdivision c (4)—as to filing lists of known creditors—and, more important, of sub. c (8)—as to reasonable notice of the bar order—are virtually superfluous, that a perfect substitute for those provisions is found in the creditor's mere knowledge (however obtained) that the proceedings are pending. As above

2. It is worth noting that railroad reorganization proceedings are almost always lengthy; this one lasted some twelve years. A creditor, hearing that they have begun, may not unreasonably sit back through the passing years, believ-

ing that he will be notified when the time has come for filing his claim.

3. See also Coe v. Armour Fertilizer Works, 237 U.S. 413, 424–425, 35 S.Ct. 625, 59 L.Ed. 1027; In re Ives, 314 Mich. 690, 23 N.W.2d 131, 134.

noted, my colleagues achieve this result by treating such knowledge as constructive notice of the bar order. Now such a constructive-notice clause is contained in § 17, sub. a (3) of the Bankruptcy Act, 11 U.S.C.A. § 35, which specifically provides that, although a creditor's claim is not scheduled by the bankrupt or filed by the creditor, it is barred by a discharge, if the creditor had actual knowledge of the proceedings.[4] I shall assume the validity of § 17 sub. a (3), despite the Mullane case.[5] But that provision is not applicable to § 77, which contains no equivalent.[6] I think that, especially as Congress deliberately omitted it from § 77, the courts may not read in such a constructive-notice clause. For such a clause—the consequence of which is that knowledge of a fact is fictionally imputed to one who has no actual knowledge of that fact—is ordinarily a creature of statute; courts usually will not impose the onerous burden of constructive notice on a litigant when it has not been imposed by the legislature. Ex parte Caplis, D.C.W.D.Tex., 275 F. 980, 986; In re Leterman, Becher & Co., 2 Cir., 260 F. 543, 547; Burck v. Taylor, 152 U.S. 634, 653–654, 14 S.Ct. 696, 38 L.Ed. 578. A court certainly should hesitate to do so when, in the light of the Mullane case, the validity of such an explicit legislative provision would be doubtful.[7]

The structure of § 77 makes it peculiarly unfair to import into it a judge-made constructive notice clause: (1) In ordinary bankruptcy, to which § 17, sub. a (3) applies, there is no statutory provision—like § 77, sub. c (8)—requiring the judge to direct that a reasonable notice be given creditors of a time within which they must file claims; in ordinary bankruptcy a known creditor cannot, therefore, argue that he was awaiting that notice before filing.[8] (2) But (as already observed) a known creditor in § 77 proceedings is reasonable (i.e., not negligent) in waiting for receipt of the specific notice to file, because § 77, sub. c (8) tells the creditor that such a notice must be given him.

4. It is, then, pertinent that, as a general rule, judicially invented constructive notice is thought to be particularly objectionable where the litigant has not been guilty of gross negligence or fraud. See, e. g., United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 333, 26 S.Ct. 282, 50 L.Ed. 499. In this connection, consider a few outstanding equities on the City's side:

(a) The City, even with full knowledge of the proceedings, might well have been misled into thinking that, notice or no notice, it did not need to file claims for its tax liens. The question has never been definitively answered by the Supreme

4. This has been construed to mean knowledge in time to file and participate in the proceedings. 1 Collier on Bankruptcy (14th ed. 1940) par. 17.23, p. 1637.

In the Act of 1867, there was no equivalent of § 17, sub. a(3). Yet some lower courts held that claims omitted by inadvertence from the debtor's schedules, even if the creditors knew nothing of the proceedings, would be cut off by a discharge. See, e.g., Lamb v. Brown, D.C. Ind.1875, 14 Fed.Cas.No.8,011. I have little doubt that today such a provision would be held unconstitutional as to known creditors.

5. The Supreme Court has not directly held § 17, sub. a(3) constitutional, but has done so inferentially. Hanover National Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113.

6. See 5 Collier, Bankruptcy (14th ed. 1943), par. 77.10.

In ordinary bankruptcy, a creditor, with

knowledge of the date of the institution of the proceedings, knows that, under § 57, sub. n, 11 U.S.C.A. § 93, sub. n, his final deadline is six months and some odd days from that time, whereas the § 77 creditor can only speculate on what the judge will consider a "reasonable time" for filing claims under § 77, sub. c(7), and on when indeed the judge will set that date.

7. The following cases—*distinguishable on their facts*—contain dicta contrary to my position: Mohonk Realty Corp. v. Wise Shoe Stores, 2 Cir., 111 F.2d 287, 290; Piedmont Ice & Coal Co. v. American Service Co., 4 Cir., 130 F.2d 78; North American Car Co. v. Peerless W. & V. Mach. Co., 2 Cir., 143 F.2d 938; Knapp v. Detroit Leland Hotel Co., 6 Cir., 153 F. 2d 715.

*All these cases were decided before the* Mullane *case.*

8. See note 6, supra.

Court. Gardner v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504, related on its facts only to the reorganization court's jurisdiction to adjudicate *in personam* tax debts which were a general lien on all tangible property of the bankrupt. The question of whether a filing was required of exclusively *in rem* claimants, with tax liens restricted to particular properties assessed, remained open, so far as I know, until today.

(b) The provisions of the plan itself may well have confused the City into thinking its claims would not be affected. Order No. 1, in 1935, authorized the trustees, without more, in their discretion, to pay all taxes or assessments due on the debtor's properties; this was clearly applicable to the City's tax liens. And the old railroad company did not list the City's claims in its asset-liability statement of debts to be affected by bankruptcy. Order No. 736, classifying creditors and stockholders, set forth no classification of claims like the City's, although the order directed that the names of all creditors falling within the listed classes be sent to the Interstate Commerce Commission. The first ICC Report stated that the Plan should provide for the payment of all pre-bankruptcy liabilities which took priority over the mortgages— and the City's did. The Final Order transferred the property "subject to the liens of taxes and assessments lawfully levied and assessed against" the real property. Section L of the Plan read:

"Claims against the principal debtor and secondary debtors, other than Old Colony, entitled to priority over their respective mortgages, and current liabilities and obligations incurred by the bankruptcy trustees during the reorganization proceedings, to the extent unpaid at the date of confirmation of the plan, shall be paid in cash or assumed by the reorganized company with the same relative priority as they now have with respect to other obligations of such debtors."

The trial judge has said that all these indications that the City was not meant to be affected by the plan should be disregarded because of the over-riding "intent of the plan that the reorganized company should take free and clear of all claims not filed in the reorganization proceeding." At first glance, it may seem that the judge, who participated in the shaping of the plan and who made the orders affecting it, is the best interpreter of the plan and those orders. But I recall these remarks of Lord Halsbury, about a draftsman's interpretation, in Hilder v. Dexter, 1902 A.C. 474: "My lords, I have more than had occasion to say that in construing a statute I believe the worst person to construe it is the person who is responsible for its drafting. He is very much disposed to confuse what he intended to do with the effect of the language, which in fact has been employed."

In any case, whatever the proper construction of the plan, the questions were close enough, I think, to excuse the City from jumping from the knowledge of the proceedings to the knowledge that it must file a claim. How much trouble would have been saved if the judge in accord with the statute, had only directed the trustees to mail notices to all known creditors to file their claims.

(c) I want to mention again the trustees' unexplained silence about the barring order, or the necessity for filing claims, in their dealings with the City, in 1936, 1940 and 1942, concerning the City's similar claims.

My overall conclusion is that justice has not been done in this case.

5. Finally, I have some doubt whether the district judge properly engaged in an interpretation of the plan and the court orders in their effect on the City's claims. Federal jurisdiction is patently but ancillary and of a kind to be exercised only "under unusual circumstances." Ciavarella v. Salituri, 2 Cir., 153 F.2d 343, 344; Greenfield v. Tuccillo, 2 Cir., 129 F.2d 854, 857; Milando v. Perrone, 2 Cir., 157 F.2d 1002, 1004; In re Devereaux, 2 Cir., 76 F.2d 522. Cf. Prudence Bonds Corporation v. City Bank Farmers Trust Co., 2 Cir., 186 F.2d 525. I see no such circumstances here.