In re NEW YORK, N. H. & H. R. CO.
No. 16562.

United States District Court
D. Connecticut.
Aug. 8, 1951.

414

E. R. Brumley, R. M. Peet, New York City, for petitioner, New York, N. H. & H. R. Co.

John P. McGrath, Corp. Counsel, New York City, Meyer Scheps, New York City, of counsel, for respondent, City of New York.

HINCKS, Chief Judge.

The New York, New Haven and Hartford Railroad Company, the petitioner herein and the reorganized company upon which have devolved the assets of the railroad-debtor which was reorganized in these proceedings, asks this court for instructions as to whether or not the plan of reorganization and the consummation order and final decree, in the reorganization proceedings brought pursuant to Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, require the payment or assumption of any or all of certain assessments laid by the City of New York (hereinafter referred to as the "City") against various properties owned by the debtor, herein, all

more specifically set forth in Exhibit A attached to its petition, or make any reservations in favor of the City. The petition seeks a further order that, in the event the questions just posed are judicially answered in the negative, this court declare (a) that the described real property is free and clear of such assessments and of all liens thereof, (b) that the City be forever restrained, enjoined and barred from enforcing these liens and from interfering with or disturbing the petitioner and its real property on account of such liens, and .(c) .that the City be directed and ordered to cancel, discharge and remove of record all such assessments. .

The gravamen of the .petition is contained in paragraph 8 thereof, wherein it is alleged that the City of New ·York, although it had timely notice of the reorganization proceedings of the petitioner, refused to file claims for any of the assessments set forth in Exhibit A attached to the petition; that the City's failure to comply with the terms of the Bar-Order, No. 32 in the reorganization proceedings, dated January 4, 1936, barred the City of New York from participating in the reorganization, and consequently rendered these liens unenforceable against the reorganized debtor.

The City contends that the reorganization proceedings in no way affected, limited or barred the City's outstanding assessments which had accrued and become liens prior to the institution of the reorganization proceedings. It further contends that since this Court never exercised jurisdiction over the City's liens during the proceedings it is too late to assert that jurisdiction now. Lastly, it is contended that the course of conduct of the debtor, its trustees and counsel practically construed the plan of reorganization as reserving the City's assessment liens and created an estoppel which prevents the petitioner from now maintaining a contrary position.

The New Haven contends that the plan and order make no reservation or exception in favor of the unpaid assessments here involved and contain no direction to pay or assume them. On the contrary, its contention is that the assessments and liens

therefor are now forever barred, and that the attempts made by the City of New York to collect and enforce them are in violation of this court's injunction.

Prior to October 23, 1935, the date of the filing and approval of the petition in reorganization, and between June 8, 1894 and January 15, 1930, various assessments for local improvements were levied by the City, ·which purportedly under the City's charter became· liens on specific properties owned by the New York, New Haven and Hartford Railroad Company. The principal amount of these liens is $134,153.94. If still ·in ·force, interest to December 31, 1950, has .accumulated thereon in the amount of $369,653.92. All of these properties involved were .located in the Borough and County of Bronx, City and State of New York.

At the time each· such' assessment ·was made, the City's Charter as ·then ·in force provided what I now assume to have been a complete and adequate; procedure for: administrative .and judicial review.· Within the time limited ;by the Charter, the .debtor took no steps to avail itself of this procedure, taking the position throughout, I ·now am told, that the assessments were void ab initio. However, for all present purposes I assume that the assessments in question· and. the liens thereon were valid and, .following the liened property ·into the hands of the bankruptcy trustees, continued to have vitality unless and until discharged, as the petitioner contends, by the consummation order and final decree in the reorganization proceedings.

The last assessment in point of time prior to October 23, 1935 (when the reorganization proceedings were instituted) contained in Exhibit A attached to the petition, was entered on January 15, 1930, and if valid became a lien, according to the applicable statute on January 25, 1930, Greater New York. Charter, Sec. 159, enacted by Laws of New York 1897, Chap. 378 as revised by Laws 1901, Chap. 466.

These assessments, if valid, constituted specific liens against the respective parcels of real property which are designated by block and lot numbers on the Tax Map of the City of New York, Greater New York

Charter, supra, Sec. 159; New York City Charter, adopted by referendum November 3, 1936, pursuant to Laws 1934, Chap. 867, in effect January 1, 1938, Sec. 314. These liens, if valid, each were enforceable exclusively against the specific property affected, Administrative Code of the City of New York, Laws 1937, Ex.Sess., Chap. 929, Secs. 415(1)–23.0 et seq.; Chap. 17, Title D, and were not enforceable against any other assets of the debtor which was under no personal obligation to pay the same.[1]

If the assessments were valid, the specific lien of each from the moment of its attachment to the individual parcel of real property affected thereby became a first, prior and paramount lien against such premises, continued to be a lien thereon "preferred in payment to all other charges", Greater New York Charter, supra, Sec. 1017; Administrative Code of the City of New York, supra, Sec. 415(1)–7.0, unless and until later terminated in the reorganization proceedings under the paramount power created by the National Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

Each piece of real estate which the City now contends is subject to a valid and continuing lien has never been in the possession of the City: from the date of each assessment each such piece of real estate has been in the exclusive possession or the exclusive control of the debtor until the institution of the reorganization proceedings, thereafter of the debtor's trustees until the consummation of reorganization, and thereafter in the reorganized railroad company.

Further facts relevant to particular contentions made will be stated in connection with my discussion of the particular contention.

The parties are in conflict in their construction of the plan of reorganization. The plan provides (Section R): "The construction of the plan by the court shall be final and conclusive." In the consumma-

tion order and final decree of the court entered September 11, 1947, jurisdiction was reserved (Section XI 2(d) "to construe the Plan as to matters which may require construction, not dealt with in this order." It is thus plain, and I think not disputed, that in the present situation the court has the power and duty to settle the conflicting contentions as to the proper construction of the plan. I address myself to that task.

By amendatory legislation, viz., the Act of August 27, 1935, 49 Stat. 911, Section 77 of the Bankruptcy Act was amended to contain certain provisions:

"The term 'creditors' shall include, for all purposes of this section all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this Act, * * *." And

"The term 'claims' includes debts, whether liquidated or unliquidated, securities (other than stock and option warrants to subscribe to stock), liens, or other interests of whatever character."

These provisions were carried over into 11 U.S.C.A. § 205: they were in effect when the reorganization of the debtor was instituted on October 23, 1935, and were in force throughout the reorganization proceedings.

Under the unequivocal language of these provisions the City throughout the proceedings by reason of the claimed assessment liens here involved was a creditor within the purview of the Act because it held a "claim" against the debtor's "property," a "claim" being defined to include a "lien." This conclusion follows from the unequivocal dictum in Gardner v. New Jersey, 329 U.S. 565, 67 S.Ct. 467, 471, 91 L.Ed. 504. I refer to this as *dictum* because there the court was concerned with taxes which were a general charge against

---

1. Whether the liens under the law of New York were enforcible by foreclosure upon the property specifically liened is a point not developed in argument and brief. From the silence of the parties on this point I infer that they consider it irrelevant for present purposes and in that view I acquiesce. I assume, however, that even if foreclosure was an available collection remedy no right to a deficiency judgment against the debtor was authorized.

all the debtor's lands, tangible property and franchises in the State. Here, as the City points out, the charge was limited by State law to liens upon the specified property assessed. However, the opinion in the Gardner case refers to the definitions contained in Section 77, sub. b of "creditors" and "claims" as "sweeping" and "all-inclusive" leaving "room for no exception". The City here, just as much as the State of New Jersey in the Gardner case, was a "creditor" and its liens were "claims" against the debtor.

Subdivision c(7) of the same Act, also contained a provision, also in effect throughout these proceedings, viz.:

"The judge shall promptly determine and fix a reasonable time within which the claims of creditors may be filed or evidenced and after which no claim not so filed or evidenced may participate except on order for cause shown * * *."

█ The City concededly neither within the time limited, nor within any extension thereof which it might have sought (but never did seek), filed any claim throughout the proceedings. Consequently, even if its claimed liens were valid and in force in 1935, which I assume for all purposes of this memorandum, under the plain language of the Act its liens may not "participate". The prohibition against *participation*, in the statutory context, obviously must be construed as broad enough to include the continuing right to have effect as valid liens upon the debtor's property: a creditor whose lien the plan leaves undisturbed certainly participates in the debtor's property.

Section 77 also contained in subsection f the following provision which was in force throughout the proceedings.

"(f) Upon confirmation by the judge, the provisions of the plan and of the order of confirmation shall, subject to the right of judicial review, be binding upon * * * all creditors secured or unsecured, whether or not adversely affected by the plan, and whether or not their claim shall have been filed, and, if filed, whether or not

approved including creditors who have not, as well as those who have, accepted it. * * * The property dealt with by the plan, when transferred and conveyed to the debtor * * * shall be free and clear of all claims of * * * creditors, and the debtor shall be discharged from its debts and liabilities, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan or directing such transfer * * *."

This language was incorporated into the plan by reference, Sec. U thereof providing that "the carrying out of the plan shall be as provided in the Bankruptcy Act": the language was expressly incorporated into the order of confirmation entered September 6, 1945 (P.R. 11931). And pursuant to the authority contained in this subdivision of Sec. 77, the order of court directing the transfer of the debtor's property, as contained in its so-called "Consummation Order and Final Decree" of September 11, 1947, under the heading "Transfer and Discharge" in express language included an adjudication that "the entire property * * * of the Debtor * * * shall vest in and become the absolute property of the Reorganized Debtor, free and clear of all claims * * * liens * * * of creditors * * *, except for the claims hereinafter referred to, which are to be assumed or paid by the Reorganized Company * * *." Said order in a later section followed the plan itself in specifically identifying and excepting some 27 separate obligations which were to be assumed (many of them liens): the order expressly provided for the payment in cash by the reorganized debtor of all taxes due the United States and for the payment of taxes from a specified secondary debtor (Old Colony) to the Commonwealth of Massachusetts. But neither the plan nor the consummation order excepted the City's liens here in question from the provision that the reorganized debtor should hold "its entire property * * *" free and clear of all claims.

█ The content and provisions of the plan quoted and referred to above, against

the statutory background and the confirmation order of September 6, 1945, which has effect under subdivision f of Sec. 77, quoted above, make plain the intent that the reorganized company was to hold free from claims never filed such as the claims of the City for the assessments and liens now in question. To give these liens continuing effect would violate the express prohibition of subdivision c(7) of Section 77 quoted above. Certainly the court should not impute to the plan a meaning which not only would be inconsistent with its text and the terms of the Order of Confirmation and Order of Consummation but also would be in violation of subdivisions c(7) and f of Section 77.

The City points to the fact that when Order 32, fixing the time within which claims were to be filed, was entered, the court ordered notice thereof by mail to the mortgage trustees but to other creditors, including the City, only by publication. As to this the City does not dispute that it had actual notice of the bankruptcy: its argument is that the failure of court to cause notice by mail to be given the City whose claimed lien was prior to that of mortgage trustees imported an intent to leave the City's liens undisturbed. The argument is specious. Order 32 was entered in 1936 long before any plan of reorganization had been proposed. Order No. 1, on October 23, 1935, had included substantially the same provision of notice as was included in Order 36. It would be preposterous to construe the substantive provisions of a plan confirmed in 1945 by reference to the terms of an *ex parte* administrative order of notice entered in 1936 before any plan at all had been formulated. Surely the City cannot seriously argue that on reading the initial petition for reorganization the court foresaw what some future plan would ultimately provide for unnamed creditors and shaped its order of notice accordingly. In 1935 and 1936 necessarily the court could only assume that only creditors whose claims should be filed and approved would participate in the debtor's assets.

By somewhat similar and equally specious, reasoning the City points to order 736 of March 13, 1944, classifying creditors and stockholders for purposes of the plan. The City was not mentioned in this order and seemed not to fall within any stated classification. From this it is argued that for purposes of the plan the City was viewed as not affected by the plan,—that its lien was to be left undisturbed. Here again the City shut its eyes to the prohibition of subdivision c(7) of Section 77. The absence of any approved claim was of course the real reason for not including the City in the classification.

With greater plausibility the City invokes Section L of the Plan which provides:

"L. Claims against the principal debtor and secondary debtors, other than Old Colony, entitled to priority over their respective mortgages, and current liabilities and obligations incurred by the bankruptcy trustees during the reorganization proceedings, to the extent unpaid at the date of confirmation of the plan, shall be paid in cash or assumed by the reorganized company with the same relative priority as they now have with respect to other obligations of such debtors."

However, reading this provision against the context of Sec. 77 and particularly subdivisions c and f thereof quoted above, it is apparent that in Sec. L, in speaking only of "claims" meant *filed* claims: subdivision c(7) of Sec. 77 denies any and all priority to claims not filed. Since the City's claim was never filed it was not a *claim entitled to priority* under Section L.

Nor can the City justly find comfort in the provisions of the final decree which expressly provided for the continuance of tax liens of the City of Boston on property of the Old Colony, a secondary debtor to whose property under the plan the reorganized company succeeded. That no such provision was stated for the City's liens imports an intent that no similar exception of the City's liens was intended. And for this difference in treatment there were at least two good reasons: (1) the Boston liens had been properly submitted to the Court for an order of payment, and

(2) the Boston liens had accrued when the liened property was in the hands of the court's trustees and thus had the status of claims against the trustees, which under basic provisions of law were classified as expenses of administration and as such were to be assumed by the reorganized property.

The City also points to the provisions of the deed which pursuant to the consummation order and final decree transferred the property to the reorganized debtor. By this deed the property was "subject to the liens of taxes and assessments lawfully levied or assessed against the same". But this provision of the deed must be construed in harmony with the consummation order, (which has already been discussed) and the terms of the habendum clause in the same deed which made it plain that the reorganized company took free and clear except as to "obligations imposed on the Corporation pursuant to the Consummation Order or assumed by the Corporation pursuant to the Consummation Order." As pointed out above the Consummation Order did *not* impose the City's liens on the reorganized corporation.

In short, on the point of construction none of the City's arguments have sufficient substance to alter my conclusion that it was the intent of the plan that the reorganized company should take free and clear of all claims not filed in the reorganization proceeding including those of the City now under consideration.

■ The contention that the prohibition of subdivision c(7) of the Act, adverted to above, does not apply because the trustees in bankruptcy took no affirmative action to litigate the validity of the City's lien has no support in the text of the Act or in any adjudicated cases. The case of DeLaney v. City and County of Denver, 10 Cir., 185 F.2d 246, 251, upon which the City heavily leans, is not in point. That case was not one under Sec. 77: it dealt only with treatment of liens in ordinary liquidation cases in bankruptcy. There the court was not confronted with the unequivocal prohibition of c(7) of Section 77. The non-action by the trustees, like non-action by a creditor, may not serve to amend an Act of Congress.

But even the DeLaney case did not go so far as to hold that when liened property has passed into the possession of the trustee in bankruptcy the lien creditor may stand outside the bankruptcy proceedings and after their termination enforce his lien against the property notwithstanding an order of the bankruptcy court discharging all claims not filed. The opinion holds merely that "after the jurisdiction of the bankruptcy court has attached to the security, the lien claimant may assert his claim to such security * * * only in the bankruptcy court" and that to that end a creditor's petition to the bankruptcy court while the estate was still open was timely even though filed some two months after the six-month period allowed under the Chandler Act for the filing of claims. Although the opinion states—by way of dictum, be it noted, that the lien creditor "may not file a claim at all and rely solely upon his lien" it cites to that proposition United States National Bank in Johnstown v. Chase National Bank, 331 U.S. 28, at page 33, 67 S.Ct. 1041, at page 1044, 91 L.Ed. 1320, where the Supreme Court qualified that right by restricting it to cases in which "[the] security is properly and solely in his (i. e., the creditor's) possession." That qualification was satisfied neither in the DeLaney case nor in the case now at bar. And there was neither holding nor intimation in the DeLaney case that the lien there involved would have survived if, as was the fact here, no claim of lien *and no petition to enforce a lien* had been filed while the bankruptcy case was open.

■ After all, Section 77, sub. a confers on the reorganization court "exclusive jurisdiction of the debtor and its property wherever located". In the Gardner case this grant was held to include property subject to liens of the State of New Jersey It was there said: "This is comprehensive language suggesting that all liens are included, not that some are beyond the reach of the court." Such language may not be emasculated by writing in a limitation

420

whereby the jurisdiction broadly granted shall exist only if affirmatively invoked by trustees in bankruptcy.

 Lastly, the City contends that, by reason of the affirmative conduct of the court's trustees and their counsel, the reorganized company is estopped from asserting that it now holds the real estate upon which the City's assessments were made free from the lien thereof. The contention is based upon the fact that in the course of the reorganization proceedings the court's trustees made certain payments to discharge assessment liens of the City, similar to those now involved, upon specific pieces of real estate. These payments were made, without specific order of court and without any prior notice to other creditors in the reorganization proceedings, in some cases in order to obtain from the City the proceeds of liened properties which have been sold in lieu of condemnation, and in all cases wholly without acknowledgment that the assessments were valid or that similar assessments would be paid. Most of the payments to which the City refers in this connection were paid in 1936 long before any plan at all had emerged and all had been made, of course, before the claims therefor had been barred by the entry of the consummation order and final decree. And all the payments referred to were made when the City still had time (a) either to petition the reorganization court for permission to make a late filing of its claim,—a permission which was consistently accorded to other creditors throughout the reorganization proceedings, or (b) to file a petition of intervention, as was done in the DeLaney case, for the enforcement of its liens.·

This position, also, is untenable. In the first place, there is no factual basis for a finding that the nonaction of the City was in any way due to these payments. There were no express representations which induced nonaction. A payment of one claim while it still has vitality, without more, is surely not enough to induce a reasonable belief that other similar claims to the same creditor will be paid even if they shall thereafter become barred. And especially is this so when the fiduciaries making the

payments now relied on were acting under a statute prohibiting participation by barred claimants. If the payment of a few claims had any tendency to induce nonaction one would expect that the consistent refusal throughout proceedings lasting twelve years to pay the great bulk of such claims would have a stronger tendency to demonstrate the imperative need of affirmative action. As to payments by the trustees of claims which accrued in the course of the reorganization proceedings, these, of course, are wholly irrelevant. Such claims, as expenses of administration, were not within the scope of the bar order.

 And in law there is no support for the claimed estoppel. Creditors in the reorganization proceedings, whose rights against the debtor under the plan have now been transformed into rights in and to the reorganized company, could not be validly estopped by the administrative acts of the debtor's trustees of which they had neither knowledge nor notice. Nor may the doctrine of estoppel serve to nullify the statutory prohibition of Sec. 77, sub. c(7). The only permissible inference is that all the parties acted with a view to the applicable law.

Somewhat as an afterthought, by reply brief the City advances the contention that my indicated rulings will deprive it of its liens without due process. The contention is predicated upon earlier provisions of the Bankruptcy Act not applicable to proceedings under Sec. 77. No contention is made that the procedure of Sec. 77 was not faithfully followed in these proceedings, or even, if that be important, that the City lacked knowledge of the pendency of these proceedings under Sec. 77. Thus the City was chargeable with knowledge throughout that if the claims were not filed it might not participate. Its continued failure to assert its claims in any way while the proceedings were in progress cannot be attributed to lack of due process.

I conclude that the petition should be granted. A decree providing the relief sought may be submitted for settlement in chambers, on notice unless notice be waived.